UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NORTHWEST 15TH STREET ASSOCIATES, | : | Chapter 11 |
| Debtor. | : | Bky. No. 10-15129 ELF |
| | : | |
| THE PHILADELPHIA PARKING AUTHORITY, | : | |
| Plaintiff, | : | |
| v. | : | |
| NORTHWEST 15TH STREET ASSOCIATES, | : | Adv. No. 10-0328 ELF |
| Defendant. | : | |

# M E M O R A N D U M

## I.

In this adversary proceeding, the Philadelphia Parking Authority ("the PPA") seeks a declaratory judgment determining, inter alia, that, pursuant to the terms of an escrow agreement, it is entitled to the release from escrow of a deed in lieu of foreclosure ("the Deed"). The Deed was executed by the debtor, Northwest 15th Street Associates ("the Debtor") and conveys ownership of the surface and air rights of a property located at the northwest corner of 15th and Arch Streets in Philadelphia, Pennsylvania ("the Property") to the PPA.

The PPA originally commenced this action in the Court of Common Pleas, Philadelphia County, Pennsylvania on June 23, 2010. On the same day, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in this court. On August 6, 2010, the Debtor removed

-1-

the Common Pleas action to the bankruptcy court. See 28 U.S.C. §1452(a).

On August 26, 2010, the PPA filed a Motion for Emergency Interim Relief ("the Motion") (Doc. # 4)[1] and requested an expedited hearing. In the Motion, the PPA requests that the court grant the declaratory relief requested in the Complaint on an expedited, preliminary basis. The PPA asserts that there is an urgent need for relief and that it can satisfy all of the elements for obtaining a preliminary injunction. (See Motion ¶¶67-80); see generally Bennington Foods LLC v. St. Croix Renaissance, Group, LLP, 528 F.3d 176, 179 (3d Cir. 2008) (stating legal standards for issuance of preliminary injunction.

At a pretrial conference in this adversary proceeding held on August 30, 2010, the court solicited the parties' views on the issue whether the court has the authority to grant the type of preliminary relief requested in the Motion. At the court's request, the parties then submitted memoranda of law in support of their respective positions, the last of which was filed on September 16, 2010. (Doc. #'s 11, 22, 24).[2]

For the reasons set forth below, I conclude that the Escrow Agreement, by its terms, precludes the grant of the preliminary relief requested by the PPA. Consequently, the Motion will be denied without any further hearing. However, I will conduct a pretrial conference

---

[1] The Motion was verified by Nacima Boukeenna, Senior Director of the Department of Engineering and Design of the PPA.

[2] By order dated September 7, 2010, I authorized the First Judicial District ("the FJD") to file a memorandum of law in support of the Motion. (Doc. # 16). The FJD's memorandum (Doc. # 17) was in the nature of a submission by an amicus curiae. See In re City of Bridgeport, 128 B.R. 30, 32 (Bankr. D. Conn. 1991) (bankruptcy court has discretion to grant a party limited amicus curiae status). However, the FJD memorandum raised legal arguments that were foreign to the claims raised and framed by the Plaintiff's Complaint in this adversary proceeding and did not influence the ruling on the Motion.

promptly to discuss with the parties the pretrial management of this adversary proceeding and the scheduling of a trial on an expedited basis.

## II.

The PPA alleges that the Debtor agreed to perform certain obligations in connection with a real estate development project for the construction of a courthouse on the Property ("the Courthouse Project"). The performance obligations were secured by a mortgage ("the Mortgage") against the Property in the PPA's favor. To further secure those obligations, the Debtor executed the Deed. The Debtor and the PPA placed the Deed in escrow pursuant to an Escrow Agreement. The PPA asserts the Debtor is in default of its performance obligations in connection with the Courthouse Project, that the default is incurable and therefore, that the PPA is entitled to a release of the Deed in escrow.

The recital of the Escrow Agreement states that the Debtor agreed to execute and deliver to the Escrow Agent "a deed in lieu of foreclosure," i.e., the Deed. Section 2(b) of the Escrow Agreement provides for the Escrow Agent to release the Deed to the PPA in the event of a default by the Debtor and after the expiration of a cure period:

> In the event of a default beyond applicable notice and cure periods under the Mortgage and the continuation of such default for thirty (30) days following written notice thereof from Mortgagee to Mortgagor and the Escrow Agent, the Escrow Agent shall release the Escrow and deliver the Deed to Mortgagee upon receipt of and in accordance with written instructions from Mortgagee.

(Ex. F to the Motion, Escrow Agreement §2(b)).

The Escrow Agreement also provides a dispute resolution process in the event that the parties disagree whether the Deed should be released from escrow due to a default by the Debtor.

-3-

Section 4 states, in pertinent part:

> The parties hereto agree that should any dispute arise with respect to the ownership or right of possession of the Escrow, the Escrow Agent is authorized and directed to retain in its possession, without liability to anyone, except for its bad faith, willful misconduct or gross negligence, the Escrow **until such dispute shall have been settled either by mutual agreement by the parties concerned or by the final order, decree or judgment of a court or other tribunal of competent jurisdiction in the United States of America**, and a notice executed by the parties to the dispute or their authorized representatives shall have been delivered to the Escrow Agent setting forth, the resolution of the dispute.

(Ex. F to the Motion, Escrow Agreement §4) (emphasis added).

The PPA has given notice to the Escrow Agent under Section 2(b) of the Escrow Agreement. In response, the Debtor notified the Escrow Agent that it disputes the PPA's contention that a default occurred and directed the Escrow Agent to retain the Deed in escrow. Thus, a "dispute" exists within the meaning of Section 4 of the Escrow Agreement.[3] Pursuant to Section 4, the Escrow Agent is obliged to retain the Deed in escrow until the dispute is resolved by a "final order" of a court of competent jurisdiction. The parties also appear to agree that the bankruptcy court is a court of competent jurisdiction for purposes of Section 4 of the Escrow Agreement.

---

[3] To some extent, PPA contends that no dispute exists: "[The Debtor] is obstructing PPA's bargained-for right to record the Deed in Lieu by concocting a 'dispute' as to its defaults where none rightly exists." (PPA Reply Memorandum at 12). However, it is impossible to determine if the PPA is correct without adjudicating the merits of the adversary proceeding. I consider the quoted statement to be a contention that the Debtor has not acted good faith in disputing the PPA's entitlement to release of the Deed, not that no "dispute" exists within the meaning of Section 4 of the Escrow Agreement.

## III.

In Pennsylvania, upon a party's default of its obligations under a mortgage, one remedy available to a mortgagee to enforce the mortgage and wrest ownership of a mortgaged property from the defaulting mortgagor is a judicial mortgage foreclosure proceeding, culminating in the judicial sale of the property conducted by the sheriff. See Pa. R. Civ. P. 1141 to 1150, 3180 to 3183.[4] Because mortgages most commonly secure payment obligations memorialized in a loan note, an alternative procedural remedy available to a mortgagee is to seek a money judgment in a civil action on the note, followed by a sheriff's sale of the property. See Pa. R. Civ. P. 1001 to 1038.3, 3101 to 3149.

Here, the parties, by contract (i.e., the Escrow Agreement) devised an alternative remedy for the PPA to obtain title to the Property in the event of a default in the Debtor's performance of its obligations in connection with the Courthouse Project.[5] Significantly, for present purposes, the Escrow Agreement outlines both the procedure and the conditions which must be satisfied for the Deed to be released through this alternative process.

Under the Escrow Agreement, the <u>procedure</u> to be followed to obtain the release of the Deed depends on whether a dispute arises between the PPA and the Debtor. If there is no dispute

---

[4] I have not forgotten that the Debtor asserts that the Mortgage is unenforceable. (See Debtor's Limited Objection to PPA Motion for Relief from the Automatic Stay at 4) (Bky. No. 10-15129, Doc. # 59). To resolve the Motion, I need not consider the merits of the Debtor's argument.

[5] Release of the Deed by the Escrow Agent permits PPA to record the Deed without resort to the potentially more cumbersome judicial mortgage foreclosure and sheriff's sale process. Presumably, the "deed in escrow" remedy was requested by the PPA in order to simplify and, perhaps, expedite its default remedy. However, without an evidentiary record on the issue, I make no factual determinations at this time regarding the purpose of the Escrow Agreement.

regarding the default, the procedure involves nothing more than notice from the PPA to the Escrow Agent. If, on the other hand, a dispute arises regarding release of the Deed in escrow, the procedure mandated by the Escrow Agreement is that the parties resolve their dispute in a court of competent jurisdiction.

The <u>condition</u> necessary for the release of the Deed also depends on whether or not a dispute arises between the PPA and the Debtor. If there is no dispute, the Deed is released upon notice and the passage of time. If there is a dispute, the Deed may be released only if there is a final order of a court of competent jurisdiction resolving the dispute.[6]

Section 4 of the Escrow Agreement conspicuously uses the phrase "final order" to describe the outcome of the court adjudication that must occur before the Escrow Agent is authorized and obliged to release the Deed. The preliminary relief requested by the PPA – whether considered preliminary declaratory judgment or a preliminary injunction – is not a "final order" under Section 4. No preliminary court order can satisfy this contractual condition necessary for the release of the Deed. Therefore, no purpose would be served by issuing <u>preliminary determinations</u> that the Debtor has defaulted and that the Deed should be released. By contract, the Deed may be released only after a <u>final determination</u> of these issues has been made.

In reaching this conclusion, I recognize that the term "final order" is susceptible to more than one meaning. Commonly, the term refers to an order that resolves all of the outstanding issues in a lawsuit and is therefore, sufficiently final in the sense that it that it may be appealed to

---

[6] While not stated expressly in the Escrow Agreement, it is obvious that the Deed should be released only if the dispute is resolved in the PPA's favor.

a higher court.[7] The term also may employ the concept of "finality" in the sense of a court order that is no longer subject to any further appeal, be it an appeal as of right or a discretionary appeal (such as a writ of certiorari to the U.S. Supreme Court). However, in no event can the term "final order" used in Section 4 of the Escrow Agreement reasonably be interpreted to refer to an order granting preliminary relief in the nature of preliminary injunction.[8]

In our jurisprudence, an order granting or denying a preliminary injunction is not a final order in either sense described above. It is not a final order in the first sense because it is "preliminary" and does not finally determine the parties' dispute. Although such an order is appealable by statute or rule of court, it is not appealable because it is a final order. It is appealable as an "interlocutory" order.[9]

Nor is a preliminary injunction "final" in the second sense discussed above. It is subject

---

[7] See 28 U.S.C. §158(a) (district court has jurisdiction to hear appeals from final orders of the bankruptcy court); 28 U.S.C. §158(d) (court of appeals has jurisdiction to hear appeals from final orders of the district court determining bankruptcy appeals); 28 U.S.C. §1291 (court of appeals has jurisdiction to hear appeals from all final decisions of the district courts of the United States); 42 Pa. C.S. §742 (Superior Court has jurisdiction of appeals from "final orders"); 42 Pa. C.S. §762(a) (Commonwealth Court has jurisdiction of appeals from "final orders" in certain classes of cases); Pa. R.A.P. 341 (a), (b) (defining final order as, inter alia, one that "disposes of all claims and of all parties" and providing for an appeal as of right from a final order of a lower court); see generally 15A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §3907 (2d ed. 1987) (discussing the purposes of the final judgment rule of federal appellate jurisdiction).

[8] Because the Motion must be denied under either meaning of the term "final order," I need not decide its precise meaning. The meaning of the term may be material, however, at the final hearing in this adversary proceeding.

[9] See 28 U.S.C. §1292(a)(1) (court of appeals has jurisdiction of "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"); Pa. R.A.P. 311(a)(4) (order denying or granting injunctions are "interlocutory appeals as of right"). Its "appealability" is an "exception" to the final judgment rule. See Hershey Foods Corp. v. Hershey Creamery Co., 945 F.2d 1272, 1276 (3d Cir. 1991).

Case 10-00328-elf    Doc 25    Filed 09/17/10    Entered 09/17/10 14:41:47    Desc Main
Document    Page 8 of 10

to modification or dissolution after a final hearing on the merits in the trial court. Of course, after the final hearing in the trial court, it also is subject to modification on appeal.

In short, the Motion must be denied because even if the PPA is correct in its contentions that the Debtor defaulted on its obligations, that the equities and the public interest support the release of the Deed and that the situation is exigent, at bottom, this adversary proceeding is an action to enforce a contract (the Escrow Agreement) and this court cannot enforce the contract by rewriting it. See Diversified Mortgage Inv. v. U.S. Life Title Ins. Co., 544 F.2d 571, 576 (2d Cir. 1976); accord Micro Data Base Systems, Inc. v. Nellcor Puritan Bennett, Inc., 165 F.3d 1154, 1157 (7th Cir. 1999). Here, the contract that the PPA seeks to enforce through a preliminary injunction itself precludes such relief because it provides, in plain language, that the PPA must obtain a declaration of its rights in a final court order. A preliminary court order cannot satisfy this condition. In effect, by agreeing to tie its remedy to the entry of a final court order, the PPA contracted away its right to obtain the preliminary injunction it now seeks.[10]

## IV.

Alternatively, the PPA requests that the court conduct the trial of this adversary proceeding on an expedited basis. PPA offers several reasons for this request: (1) that the Debtor's default and the PPA's right to relief is clear; (2) the defenses raised by the Debtor are largely legal, rather than factual in nature; and (3) the risk that delay will harm the public interest by jeopardizing completion of the Courthouse Project, a potential harm exacerbated by the

---

[10] The Escrow Agreement easily could have been drafted in a manner that preserved the PPA's right to obtain an expedited, preliminary resolution of any dispute regarding the release of the Deed from escrow.

substantial amount of public funds already invested in the Project. (Motion ¶¶ 14-15, 71-74; PPA Memorandum of Law at 12-13). The Debtor depicts the PPA's request for an expedited resolution of this dispute as a rush to judgment in which the Debtor's property rights would be "trampled." (Debtor's Memorandum of Law at 2).

I see no reason to characterize the issue the "black or white" terms used by the parties. Each side has articulated legitimate procedural concerns. The real question is what pretrial management process appropriately balances the PPA's interest in a prompt resolution of this dispute with the Debtor's due process rights. The answer to that question is largely a practical one[11] and may require consideration of information known only to the parties at this time. Therefore, I will conduct another pretrial conference promptly to provide the parties with an opportunity to be heard on these issues and to assist me in setting appropriate terms for the pretrial management order in this adversary proceeding. I will ask the parties to discuss these issue and, if possible, submit a proposed joint pretrial order. If, as is likely, the parties cannot agree in advance on appropriate pretrial deadlines and an approximate trial date, I will require each party to submit a separate pretrial management statement.

An order consistent with this Memorandum will be entered.

---

[11] I note, for example, that the Debtor has not yet filed an Answer to the Complaint and that on September 13, 2010, the Debtor filed a Motion to Dismiss the Complaint pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6) and (7). The response to the Motion to Dismiss is due September 27, 2010.

Date: __September 17, 2010__     _____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**